DIMITRITZA TOROMANOVA
2912 Hot Cider Ave.
Las Vegas, NV 89031
(702) 467-6972

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

DIMITRITZA TOROMANOVA, an individual

    Plaintiff,

vs.

WELLS FARGO BANK, N.A.; WACHOVIA MORTGAGE, FSB; NATIONAL DEFAULT SERVICING CORP; and DOES 1-10, I Inclusive,

    Defendants.

Case No.: 2:12-cv-00328-GMN-CWH

Jury Trial Requested

Date:
Time:
Courtroom:

**RELIEF IS NEEDED BY 6/6/12**

## EX PARTE APPLICATION FOR STAY OF ENFORCEMENT OF TEMPORARY WRIT OF RESTITUTION IN UNLAWFUL DETAINER ACTION AND PRELIMINARY INJUNCTION

Good cause exists for making the application:

1. Unlawful detainer actions are quickly resolved, with little consideration given to whether the Defendants are actually the lawful owner of a given property.

2. Plaintiff, DIMITRITZA TOROMANOVA has filed a civil action in this court to set aside the foreclosure of her home based on fraud in the execution of mortgage assignments, transfers and failure by Defendants to follow Nevada non-judicial foreclosure procedure.

3. Plaintiff was denied due process in an unlawful detainer summary proceeding in which evidence is not taken on the issue of the validity of title, ownership or questions about right to possession AND Plaintiff's request for consolidation with this action was ignored.

4. Under **Asuncion v Superior Court** (1980) 108 CA3d 141, 145-146, 166 CR 306, a homeowner in this situation may ask the court to consolidate the two cases so all issues will be tried in a single trial or request a stay of the unlawful detainer action until the title issues have been decided in the title action. **Asuncion seems to imply that consolidation is this instance, if requested by the homeowner, is mandatory - as evidenced by the court's use of the language "due process guarantees".**

The Ex Parte Application will be based upon this Application, the Memorandum of Points and Authorities, Plaintiff's Complaint and Opposition to Motion to Dismiss the Declaration of Plaintiff, Dimitritza Toromanova and other documentary evidence.

The risk of irreparable harm to Plaintiff is significant when weighed against the temporary delay of this Court issuing a Stay.

## INTRODUCTION
## I.

Plaintiff, Dimitritza Toromanova , executed a Deed of Trust ("DOT) and Note in or around 2006 to secure a loan from WORLD SAVINGS BANK, FSB, ("WSB"), in the amount of $288,000.00, which she used to purchase her home at 2912 Hot Cider Ave., N. Las Vegas, NV 89031. WSB is the beneficiary under the Deed of Trust and the Note. WSB changed its name in or around 2007 to Wachovia Mortgage, FSB. ("Wachovia") Wells Fargo Bank N.A. ("Wells") has submitted numerous documents and correspondence, with their motions, allegedly as proof of its merger with Wachovia former WSB. However, an endorsement must have been made after the merger of <u>Wachovia into Wells Fargo.</u> The Note presented by Defendant Wells in their Motion(s) is not certified and has never been endorsed or assigned, even in blank, to anyone, Wells therefore has not presented any evidence that it is the owner of Plaintiff's mortgage and mortgage note.

It also appears that Wachovia securitized their mortgage loans in 2007. (Exhibit 5 in Plaintiff's Opposition to Motion to Dismiss, IRS 938 REMIC reporting information.) The Note presented by Wells is not a copy of the current Note, since in a REMIC Trust the Notes are required to be endorsed without recourse to the order of Trustee and showing an unbroken chain of endorsements from the originator thereof to the Person endorsing it to Trustee.

**Additionally, once a loan has been securitized, it loses its security, namely the Deed of Trust and the lender thereby lose their ability to enforce, control or foreclose under the Deed of Trust.**

As is the case in Plaintiff's action; possible defect in foreclosure remains when a Note has been negotiated, and there is no evidence that the foreclosing trustee is the nominee of the current holder or that the foreclosing trustee was substituted by a nominee of the current holder. *Weingartner vs. Chase Home Finance*. (Cite as: 2010 WL 1006708 (D.Nev.)

Under NRS § 107.080(5), a "sale made pursuant to this section may be declared void by any court of competent jurisdiction in the county where the sale took place if . . . [t]he **trustee or other person authorized to make the sale does not substantially comply with the provisions of this section.**"

A purchaser of the property as described in the statute, who starts an unlawful detainer proceeding to evict an occupant in possession, **must show that he or she acquired the property at a regularly conducted sale and thereafter "duly perfected" the title** [CCP § 1161a; Vella v. Hudgins (1977) 20 C3d 251,255, 142 CR 414, 572 P2d 28 ].

**Since Plaintiff's mortgage is part of a REMIC Trust, Wells cannot be the owner/beneficiary and could not have a "duly perfected" title and therefore does not have standing to initiate an Unlawful Detainer Action.**

In *Farnow v Department 1 of Eighth Judicial District*, 64 Nev. 109, 126, 178 P.2d 371, 379 the Nevada Supreme Court stated:

*We do not believe to be constitutional any procedure so speedy, summary and drastic as to enable a landlord to dispossess a tenant without first showing, by competent, relevant and material evidence, at a hearing, judicially, fairly and impartially conducted, the existence of sufficient facts to establish, at least prima facie, the clear right to the immediate possession of the property involved.*

## MEMORANDUM OF POINTS AND AUTHORITIES
## II.

Normally, the unlawful detainer action may encompass only a "narrow and sharply focused examination of title" directed at the formal validity of the trustee sale *Vella v. Hudgins*, (1977) 20 Cal.3d 251, 255, 142 Cal.Rptr. 414, 416.

In Plaintiff's case, Wells Fargo is not a "bona fide", purchaser and had notice of the claims of irregularities in the non-judicial foreclosure by Plaintiff. **As such, there is no presumption that the trustee's deed after sale is valid, annulling the Unlawful Detainer Action.** Wells Fargo was not a party to the original transaction and is not mentioned in the Deed of Trust. Because of their unlawful actions, Defendants are unable to produce a title for, or show ownership of, my property. This causes what is called a "defect of title", and legally prohibits the lender or servicer from foreclosing, regardless of whether or not my loan is current.

**Thus, it would appear that sufficient facts, which would support a stay, pending the conclusion of Plaintiff's civil action, are present.**

It has been held where foreclosure of a trust deed would moot a claim of right under a deed, and the deed is attacked as a fraudulent conveyance, a preliminary injunction is permitted

4

to prevent foreclosure pending trial. *Weingand v. Atlantic Savings & Loan Assn.*, (1970) 1 Cal.3d 806, 83 Cal.Rptr. 650. **Staying the eviction here is similar.**

Plaintiff seeks an order preventing Defendants from proceeding with the eviction because, among other things, Defendants have not followed the proper procedures for recording all the deeds and assignments for this property, the record before this Court includes extensive documentary evidence of these facts. Moreover, Wells has not submitted any evidence establishing a "duly perfected title". **The term "duly" implies that all of those elements necessary to valid sale exist, which in this case, with defects in title, cannot be attained.** Defendant Wells lacked standing to file an Unlawful Detainer Action against Plaintiff.

Plaintiff has also established she is likely to experience irreparable harm if the scheduled eviction proceeds unrestricted; the balance of hardships tips sharply in Plaintiff's favor.

Federal Rule of Civil Procedure 65 provides that a court may grant a preliminary injunction upon a showing of: (1) irreparable harm to the petitioning party; (2) the balance of equities weighs in petitioner's favor; (3) an injunction is in the public's interest; and (4) the likelihood of petitioner's success on the merits. *See* FED. R. CIV. P. 65; *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 376 (2008) (citations omitted).

An injunction "is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," if the plaintiff "also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011).

A plaintiff must show that an irreparable injury is *likely*, not merely *possible*, before a temporary restraining order may be issued. *American Trucking Ass'ns v. City of Los Angeles,*

F.3d 1046, 1052 (9th Cir. 2009) (reversed on other grounds *Am. Trucking Ass'ns v City of Los Angeles*, 596 F.3d 602 (9th Cir. 2010)) (emphasis added). "Issuing an [injunction] based only on a possibility of irreparable harm is . . . an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 129 S. Ct. at 375-76.

Here, Plaintiff has established that she would be irreparably harmed by allowing Defendants to evict her from her home.

## CONCLUSION

The basis for injunctive relief in the federal courts is irreparable injury and the inadequacy of legal remedies. See Weinberger v. Romero-Barbell, 456 U.S. 305, 312 (1982). In each case, the Court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. All courts agree that the plaintiff must satisfy the general equitable requirements by showing a significant threat of irreparable injury and that the legal remedies are inadequate. See Arcamuzi v. Cont'l Airlines, Inc., 819 F.2d 935, 937 (9th Cir. 1987). The traditional test focuses on whether the plaintiff has demonstrated a fair chance of success on the merits at the minimum, a significant threat of irreparable injury, at least a minimal tip in the balance of hardships, and whether any public interest favors granting the injunction. See American Motorcycle Ass'n. v. Watt, 714 F.2d 962, 965 (9th Cir. 1983).

An alternative test permits the plaintiff to meet its burden by showing either a combination of probable success on the merits and the possibility of irreparable injury or serious questions as to these matters and the balance of hardships tips sharply in plaintiff's favor. See First Brands Corp. v. Fred Meyer, Inc., 809 F.2d 1378 (9th Cir. 1987). These are not separate tests but the outer reaches of a single continuum. See L.A. Mem'l Coliseum Comm'n v. NFL, 634 F.2d 1197, 1201 (9th Cir. 1980.)

**A temporary restraining order is appropriate to maintain the status quo. An injunction is appropriate because of the irreparable harm that will be caused to the Plaintiff if the eviction occurs. Plaintiff will be evicted from her home in or around June 4, 2012, without intervention from this Court.**

In the matter of *Asuncion vs. Superior Court,* (1981) 108 Cal.App.3d 141, 146, 166 Cal.Rptr. 306, the Fourth District Court of Appeal held in pertinent part, "A possibility, which we understand is frequently utilized in other counties, is for the superior court **to stay the eviction proceedings until trial of the fraud action**, based on the authority of Code of Civil Procedure section 526 which permits a preliminary injunction to preserve the status quo on such grounds as irreparable injury, multiplicity of legal actions, or unconscionable relative hardship. (See, e. g., ***Continental Baking Co. v. Katz,*** 68 Cal.2d 512, 528, 67 Cal.Rptr. 761 and see gen. discussion of subject in 2 ***Witkin, Cal. Procedure*** (2d ed. 1970) ***Provisional Remedies,*** § 47, p. 1496; § 73, pp. 1511-1512.) Four of the guiding factors relied upon by the courts to determine whether a preliminary injunction is appropriate are listed as follows in Wright & Miller, Federal Practice and Procedure: Civil, § 2948:

(1) The significance of the threat of irreparable harm to plaintiff if the injunction is not granted;

(2) The state of the balance between this harm and the injury that granting the injunction would inflict on the defendant;

(3) The probability that plaintiff will succeed on the merits; and,

(4) The public interest.

**Rule 65(b) of the Federal Rules of Civil Procedure provides that this Court may issue a TRO without notice to the adverse party where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant..." The standards for a Temporary Restraining Order are similar to the standards for a Preliminary Injunction.**

Injunctive relief is appropriate when the Plaintiff will suffer "irreparable harm" and when the Plaintiff shows "a reasonable probability of success on the merits of its claim."

In this case, injunctive relief is appropriate because Plaintiff is threatened with a clear and present danger of irreparable harm if she is evicted from her home.

The two tests for issuance of a restraining order or preliminary injunction "are not separate, but rather represent the outer reaches of a single continuum.

The irreparable harm to the Plaintiff is the loss of her home. The Plaintiff will suffer physical and mental injury if she is required to move from her home with no possibility of replacing this housing, thus she will be rendered homeless.

The Plaintiff will be irreparably harmed by the loss of her home. The Defendant will just have a mere interference with the eviction. No adequate remedy at law is available to the Plaintiff to protect her home.  "A preliminary injunction is available when the moving party can demonstrate that the nonmoving party's conduct, if allowed to continue, will cause irreparable harm for which compensatory relief is inadequate and that the moving party has a reasonable likelihood of success on the merits." Boulder Oaks Cmty. Ass'n v. B & J Andrews, 125 Nev. 397, 403, 215 P.3d 27, 31 (2009).

Based on the foregoing, it is clear that the balance of hardships tips steeply in Plaintiff's favor. Plaintiff respectfully request that the Court enter an order staying enforcement of the Writ of Restitution pending adjudication of this matter, and allow Plaintiff her constitutional right to a meaningful evaluation of her current case.

**WHEREFORE**, Plaintiff prays for Relief as follows:

1. That the Court enter a Stay of the Writ of Restitution, a Temporary Restraining order and Preliminary Injunction that would prohibit Defendants WELLS FARGO, WACHOVIA MORTGAGE, FSB; NATIONAL DEFAULT SERVICING CORP., their agents, employees, attorneys, and anyone acting on their behalf, from evicting, taking possession of, or in any other manner interfere with the possession by Dimitritza Toromanova of her home

1  located at 2912 Hot Cider Ave., Las Vegas, NV 89031;

2      2.    that no bond be required of the Plaintiff because no damages are ascertainable to
3  the Defendant Wells Fargo.

4      3.  For such other and further relief as the Court deem just and proper.

6  DATED this __4__ day of June, 2012

        Respectfully submitted:

        *Without Recourse*
        _____
        Dimitritza Toromanova, Plaintiff
        2912 Hot Cider Ave.
        Las Vegas, NV 89031

# DECLARATION OF DIMITRITZA TOROMANOVA

I, DIMITRITZA TOROMANOVA declare as follows:

1. I am the Plaintiff in the current case and that I have personal knowledge of the facts set forth herein, unless otherwise indicated, and if called as a witness could and would so testify.

2. That I, from January 2010 until August 2011, submitted paper/financials to Wachovia for a loan modification, without any results and additionally and no-one ever properly responded to my Qualified Written Requests.

3. That I, after an illegal foreclosure sale in October 2011 decided to take legal action.

4. That in or around 1/3/2012 Defendant Wells filed an Unlawful Detainer action in NLV Justice Court.

5. That I filed a Complaint in Las Vegas District Court on 2/10/2012 for Wrongful Foreclosure, Trespassing, Fraud and RICO. (2:12-cv-00328)

6. That in or around 2/14/2012 I filed an Appeal was filed in District Court

7. That I was ordered to post a $900.00 dollar Bond.

8. That I requested, in both Justice Court and District Court, that the Unlawful Detainer action be consolidated with the -00328 action.

Under **Asuncion v Superior Court** (1980) 108 CA3d 141, 145–146, 166 CR 306, a homeowner in this situation may ask the court to consolidate the two cases so all issues will be tried in a single trial or request a stay of the unlawful detainer action until the title issues have been decided in the title action. **Asuncion seems to imply that consolidation is this instance, if requested by the homeowner, is mandatory - as evidenced by the court's use of the language "due process guarantees".**

9. That I, in my Appeal brief to District Court raised the issue that a Temporary Writ of Restitution may not issue in an Unlawful Detainer action until movant has posted a sufficient bond. NRS 40.300 (3)(c). Defendants did not post a Bond. Justice and District Court erred by disregarding this mandatory requirement.

10. That I challenged the jurisdiction of Justice Court, since the amount in question is in excess of $90,000.

11. That I argued that this was a situation where the merits of my federal case is yet to be decided and that lenders/bankers are using the Unlawful Detainer action to circumvent the Nevada Foreclosure law since the issue of title may not be litigated in an Unlawful Detainer.

12. That the District Court Judge basically refused to hear my case based on the fact that A Temporary Writ had been issued **and in spite of the fact that EDCR 1.30 et sec. and Administrative Order No. 2010-04 (Exhibit 8), in pertinent part states:**

> IT IS HEREBY ORDERED that the chief judge shall designate a district judge to hear all civil appeals of Justice Court cases in which the Justice Court has issued an order granting a Temporary Writ of Restitution and an accompanying Temporary Writ of Restitution for real property and appeals from Justice Court involving permanent writs of restitution for real property after a trial.

13. It appears the Lender/Banker, issue a notice of sale, do not complete the sale and do not thereafter notify homeowner of the following sales; they "sell" the property to themselves and start an Unlawful Detainer action, thereby getting around proving ownership.

14. These Defendants foreclosed on my property based on a defective security instrument, they cannot obtain a legal "perfected title" and therefore do not have standing to initiate an Unlawful Detainer action due to these improprieties. These facts also destroy any landlord tenant relationship Defendant Wells used as a basis for the Unlawful Detainer action.

**BUT, I will be evicted from my home without an opportunity to be heard on issues, which if I prevail on, will keep me in my house - a deprivation of my due process rights.**

15. That under <u>Asuncion v. Superior Court</u>, (see above) **seems to imply that consolidation is this instance, if requested by the homeowner, is mandatory - as evidenced by the court's use of the language "due process guarantees".**

16. Phil Ting, the San Francisco assessor-recorder, found widespread violations or irregularities in files of properties subject to foreclosure sales. But the detailed and comprehensive nature of the San Francisco findings suggests how pervasive foreclosure irregularities may be across the nation. **The improprieties range from the basic** — a failure to warn borrowers that they were in default on their loans as required by law — **to the arcane.** *For example, transfers of many loans in the foreclosure files were made by entities that had no*

11

*right to assign them and institutions took back properties in auctions even though they had not proved ownership.*

In an interview late Tuesday, Mr. Ting said he would forward his findings and foreclosure files to the attorney general's office and to local law enforcement officials. Kamala D. Harris, the California attorney general, announced a joint investigation into foreclosure abuses last December with the Nevada attorney general, Catherine Cortez Masto. The joint investigation spans both civil and criminal matters.

"We can deduce from the public evidence," the report noted, "that there are indeed legitimate victims in the mortgage crisis. Whether these homeowners are systematically being deprived of legal safeguards and due process rights is an important question."

A version of this article appeared in print on February 16, 2012, on page A1 of the New York edition with the headline: Audit Uncovers Extensive Flaws in Foreclosures.

I declare under penalty of perjury and under the laws of the State of Nevada that the foregoing is true and correct.

Executed June ____, 2012 in Las Vegas, Nevada

_____
Dimitritza Toromanova, Plaintiff
2912 Hot Cider Ave., Las Vegas, NV
702-467-6972

## CERTIFICATE OF SERVICE

I hereby certify that on this _____ day of June 2012, I mailed a true and correct copy of the foregoing EX PARTE APPLICATION FOR STAY OF ENFORCEMENT OF TEMPORARY WRIT OF RESTITUTION IN UNLAWFUL DETAINER ACTION AND PRELIMINARY INJUNCTION to counsel of record for Defendants, by placing same in the United States Mail, postage prepaid in Las Vegas, Nevada, properly addressed as follows:

DAVID J. MERRILL, P.C.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145

_____
Dimitritza Toromanova, Plaintiff
2912 Hot Cider Ave.
Las Vegas, NV 89031

12